IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LARRY BRUGH AND
SUZANNE BRUGH,                                    Civil Action No. 3:17-cv-71

      Plaintiffs,

   v.

MOUNT ALOYSIUS COLLEGE
AND THOMAS FOLEY,                                 JURY TRIAL DEMANDED

      Defendants.

## COMPLAINT

Plaintiffs, Larry and Suzanne Brugh, by undersigned counsel, file this Complaint and in support allege the following.

### I. Jurisdiction

1. The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, as amended and this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### II. Venue

2. Venue is proper in the Western District of Pennsylvania, in that this action arises out of events that occurred in Cambria County, Pennsylvania.

### III. Administrative Remedies

3. Plaintiffs have satisfied all procedural and administrative requirements set forth in 29 U.S.C. §626 in that:

    a. Plaintiff Larry Brugh filed a timely charge with the EEOC and PHRC alleging age discrimination, sex discrimination, and retaliation.

b.     Plaintiff Suzanne Brugh filed a timely charge with the EEOC and PHRC alleging retaliation.

c.     On May 6, 2016, the Equal Employment Opportunity Commission determined that there was reasonable cause to believe that Plaintiff Larry Brugh was demoted and discharged in retaliation for his having engaged in protected conduct in violation of Title VII of the Civil Rights Act of 1964.

d.     On May 6, 2016, the Equal Employment Opportunity Commission determined that there was reasonable cause to believe that Plaintiff Suzanne Brugh's position as Game Clock Operator was terminated in retaliation for her association with her husband, Plaintiff Larry Brugh, in violation of Title VII of the Civil Rights Act of 1964.

e.     Plaintiffs received Notices of Right to Sue from the EEOC dated January 30, 2017.

f.     This case was filed within 90 days of Receipt of the Notices of Right to Sue.

g.     More than one year has lapsed since the date Plaintiffs filed their PHRC complaints.

## IV. Parties

4.     Plaintiff Larry Brugh is an adult individual who resides at 119 Julz Drive, Johnstown, Pennsylvania 15904.

5.     Plaintiff Suzanne Brugh is an adult individual who resides at 119 Julz, Drive Johnstown, Pennsylvania 15904.

6.     Defendant Mount Aloysius College is a Pennsylvania private college with a mailing address of 7373 Admiral Peary Hwy, Cresson, Pennsylvania 16630 (hereinafter, "College").

7.     Defendant Thomas Foley is an adult individual who maintains an office at Presidents Office, 7373 Admiral Peary Hwy, Cresson, Pennsylvania 16630.

8.     At all times relevant hereto, Defendant College is and was an employer

affecting interstate commerce within the meaning of 42 U.S.C. § 2000e(b), as it employs 15 or more employees and within the meaning of 43 Pa. Cons. Stat. Ann. § 955 as it employs 4 or more individuals.

9. At all times relevant hereto, Defendant College acted or failed to act by and through its duly authorized agents, servants and employees, who conducted themselves within the scope and course of their employment.

10. At all times relevant hereto, Defendant Foley aided and abetted the retaliation against Plaintiffs described below.

**V. Facts**

11. Plaintiff Larry Brugh was hired by the College on August 19, 1985.

12. In 1989, Mr. Brugh was appointed Assistant Dean of Students and in 1996 he was appointed to serve simultaneously as the Director of Career Services.

13. In the summer of 1992, the College was prepared to hire an African-American male as its Men's Basketball Head Coach.

14. Just prior to hiring the new coach, the College learned that the new coach's wife was Caucasian.

15. Solely because of the new coach's race, the College changed its mind and decided not to hire this coach.

16. Mr. Brugh was present when the Dean of Students indicated that the coach would not be hired because of his race.

17. Mr. Brugh immediately objected to and opposed the College's decision to not hire the new coach because such a decision would constitute illegal racial discrimination.

18. Subsequently, the college's Athletic Director at the time the coach was not hired, Joseph De Antonio, filed a claim of discrimination alleging, in part, that his termination was in retaliation for his opposing racial discrimination when the College failed to hire the Men's Head Basketball Coach.

19. Mr. Brugh was a witness in the case filed by Mr. De Antonio in support of his claim of retaliation and submitted an Affidavit in support of Mr. De Antonio's claims.

20. The College was aware of Mr. Brugh's participation in the claim filed by Mr. De Antonio.

21. Later, the coaching candidate who was not hired filed a discrimination complaint alleging that the failure to hire him as Head Men's Basketball Coach was the result of racial discrimination.

22. Mr. Brugh was a witness in the Head Men's Basketball Coach candidate's discrimination case and would have offered testimony to support the coach's claims of employment discrimination.

23. The College was aware of Mr. Brugh's participation in the claim filed by the Head Men's Basketball Coach candidate.

24. In 1997 and 1998, Larry Brugh and Suzanne Brugh filed charges of discrimination alleging they were retaliated against because of their opposition to the discrimination that occurred in the summer of 1992 and their participation in the discrimination and retaliation claims made by the Head Men's Basketball Coach candidate who was not hired and the Athletic Director who was terminated.

25. In September 2006, Dr. Jane Grassadonia was hired by the College as the Vice President of Student Affairs, a position in which she supervised Mr. Brugh.

During her tenure, Dr. Grassadonia was highly and baselessly critical of Mr. Brugh's performance, although Mr. Brugh received no negative performance evaluations during his tenure under Dr. Grassadonia.

26. In order to improve his working relationship with Dr. Grassadonia, Mr. Brugh began working with a College Senior Vice President, Suzanne Campbell.

27. On at least six separate occasions, College administrators made negative comments about or referenced the opposition by Mr. Brugh to the racial discrimination against the Men's Head Basketball Coach or the participation of Mr. Brugh in connection with the racial discrimination complaints brought against the College by the Men's Head Basketball Coach candidate and the Athletic Director as described above.

    a. In August 2011, Ms. Campbell told Mr. Brugh that she had read a report regarding Mr. Brugh's involvement in the claims of racial discrimination and retaliation at the College and that she had discussed it with the College President Thomas Foley.

    b. In October 2011, Ms. Campbell contradicted her comments of August 2011 when she told Mr. Brugh that President Foley in fact knew nothing about Mr. Brugh's involvement in the claims of racial discrimination and retaliation at the College and did not want to know anything about it.

    c. In March 2012, Ms. Campbell told Mr. Brugh, "it's probably best not to mention the racial incident of the past in the formal human resources review, so people don't think you can't let go of the past."

    d. On August 3, 2012, during a meeting with Mr. Brugh, President Foley mentioned Paul Farcus, who had overseen an earlier hearing related to Mr. Brugh's involvement in allegations of racism and retaliation at the College. President Foley further stated that "anyone who would call a lawyer doesn't deserve the courtesy of meeting with the President."

    e. On August 23, 2012, during a meeting with Mr. Brugh, Vice President of Academic Affairs Tim Fulop stated that Mr. Brugh could not let go of a "ten year old problem," in reference to the Mr. Brugh's involvement in claims of racial and discrimination and retaliation at the College.

  f. On September 7, 2012, in a meeting with the entire College Student Affairs Division, President Foley advised those in attendance not to have contact with Mr. Brugh and made specific reference to the "last time Larry filed a grievance," stating that Mr. Brugh "brought a lot of good people into it." President Foley went on to state, "I never read the case before but because of this matter with Larry, I just read it. I am a lawyer and I am going to handle this situation and I want you to know I have got all of your backs."

 28. By letter dated June 8, 2012, Mr. Brugh was reappointed to his positions as Assistant Dean for Student Affairs and Director of Career Counseling for the period July 1, 2012 and June 30, 2013.

 29. In August 2012, Mr. Brugh was stripped of his position as Assistant Dean of Students and demoted to solely holding the position of Director of Career Services. At the time of this demotion, Mr. Brugh's office was moved to a new location that was in a different building than his administrative assistant.

 30. On September 7, 2012, during a College Student Affairs meeting, President Foley announced that Mr. Brugh no longer held the title of Dean of Student Affairs and that Mr. Brugh decided to hire an attorney and argue that he had been demoted and discriminated against because he is a man. President Foley stated that this "changes the temperature of things whenever somebody does that," and that he never had heard of someone claiming gender discrimination when they have not actually been demoted.

 31. In the same meeting on September 7, 2012, Foley stated that since this was not the first time that Mr. Brugh had sued the College, he had reviewed the file from Mr. Brugh's previous lawsuit from 10-12 years prior. Foley made a reference to those in the room seeing Mr. Brugh with a big "L" on his forehead and warned those in attendance that they did not want to get in the middle of the lawsuit. President Foley

elaborated that during the last lawsuit, people got dragged into it, which made their lives more difficult. Foley instructed everyone in attendance to walk away from Mr. Brugh if he approached them and attempted to discuss the case.

32.   Also during the same meeting on September 7, 2012, Foley stated that Mr. Brugh had made 8 or 9 complaints over the course of six months, but none rose to the level of discrimination and he expressed that he did not understand how Mr. Brugh could claim to be the subject of gender discrimination when the challenged employment decision had been made by another man. President Foley concluded the meeting by stating that he felt it was bizarre that someone would think he could litigate a position at a private institution in federal court.

33.   On September 21, 2012, Mr. Brugh's attorney sent a letter to Daniel Rullo, Chairperson of the College's Board of Trustees alleging that Mr. Brugh had been the victim of employment discrimination and retaliation. (A copy of the September 21, 2012 letter is attached hereto as Exhibit A).

34.   On December 10, 2012, the College terminated Mr. Brugh. One of the two reasons that the College cited in support of its decision to terminate Mr. Brugh's employment was the September 21, 2012, letter sent by Mr. Brugh's attorney. The other reason cited by the College related to the revocation of a donation to the College by one of Ms. Brugh's cousins.

35.   At all times relevant hereto, Mr. Brugh was a hardworking, conscientious, talented, and successful employee.

36.   There was no performance reason for Mr. Brugh's demotion in August 2012 or his termination on December 10, 2012.

37. Mr. Brugh's demotion in August 2012 and his termination on December 10, 2012 were solely in retaliation for his engaging in protected conduct on multiple occasions as described above.

38. Plaintiff Suzanne Brugh is the wife of Plaintiff Larry Brugh.

39. Ms. Brugh was employed by the College in various capacities from October 1988 through March 2012.

40. Ms. Brugh served as the Game Clock Operator for the College's men's and women's basketball teams' games for the 2007-2008 season through the 2011-2012 season.

41. Ms. Brugh regularly worked basketball games in tandem with Steve Shuniak, who operated the shot clock.

42. Ms. Brugh was terminated from her position as Game Clock Operator prior to the start of the 2012-2013 basketball season.

43. The College continued to employ Mr. Shuniak during the 2012-2013 basketball season.

44. At all times relevant hereto, Ms. Brugh was a competent, reliable, and hardworking employee.

45. There was no performance related reason for Ms. Brugh's termination prior to the start of the 2012-2013 basketball season.

46. Ms. Brugh's termination prior to the start of the 2012-2013 season was solely in retaliation for her association with her husband Mr. Brugh and his protected conduct which occurred during the period 1992 through 2012, as well as her engaging in protected conduct.

## Count I
## Title VII – Retaliation
## Plaintiffs vs. College

47. Plaintiffs incorporate paragraphs 1 through 46 as though the same had been fully set forth at length herein.

48. The protected conduct engaged in by the Plaintiffs includes the following:

a. Mr. Brugh's opposition to the racial discrimination against the Men's Head Basketball Coach candidate in the summer of 1992;

b. Mr. Brugh's participation in the racial discrimination complaint filed against the College by the Men's Head Basketball Coach candidate;

c. Mr. Brugh's participation in the retaliation complaint brought by the Athletic Director;

d. The 1997 and 1998 charges of discrimination filed by Mr. Brugh and Ms. Brugh alleging retaliation because of conduct protected by Title VII of the Civil Rights Act of 1964;

e. The retention of an attorney by Mr. Brugh in 2011 and 2012 in connection with discrimination and retaliation against him; and

f. The letter sent by the attorney representing Mr. Brugh dated September 21, 2012.

49. At all times relevant hereto, the protected conduct identified in Paragraph 48 was known to the Defendants.

50. The retaliation against Mr. Brugh engaged in by the College includes the following:

a. Mr. Brugh's demotion in August 2012; and

b. Mr. Brugh's termination on December 10, 2012.

51. The retaliation against Ms. Brugh engaged in by the College is the termination of her position as a Game Clock Operator in 2012.

52. Mr. Brugh is protected against retaliation because of his status as an employee.

53. Ms. Brugh is protected against retaliation because of her status as a former employee, her status as an employee and/or because of her association with Mr. Brugh, since she is within the zone of protected interests of Mr. Brugh.

54. Defendant College's treatment as described above of Plaintiffs constituted retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991.

55. Defendant College's actions were taken with malice and/or reckless indifference to Plaintiffs' federally protected rights.

WHEREFORE, Plaintiffs demand judgment against Defendant College pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991 as follows:

a. That Defendant College be ordered to reinstate Plaintiffs Larry and Suzanne Brugh into the positions they occupied prior to Defendant College's discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

b. That Defendant College be required to compensate Plaintiffs for the full value of wages they would have received had it not been for Defendant College's illegal treatment of Plaintiffs, with interest until the date Plaintiffs are offered employment into a position substantially equivalent to the one which Plaintiff Larry Brugh occupied on December 10, 2012 and the one which Plaintiff Suzanne Brugh occupied prior to the start of the 2012-2013 basketball season;

c. That Defendant College be required to provide Plaintiffs with front pay if the Court determines reinstatement is not feasible;

d. That Defendant College be required to compensate Plaintiffs for lost benefits;

e. That Plaintiffs be awarded compensatory damages, including damages for pain and suffering, in an amount to be determined at trial;

f. That Defendant College be ordered to pay Plaintiffs punitive damages;

g. That Defendant College be enjoined from discriminating or retaliating against Plaintiffs in any manner prohibited by Title VII;

h. That Plaintiffs be awarded against Defendant College the costs and expenses of this litigation, including a reasonable attorneys fee; and

i. That Plaintiffs be granted such further legal and equitable relief as the Court may deem just and proper.

## Count II
## PHRA
### Plaintiffs vs. All Defendants

56. Plaintiffs incorporate paragraphs 1 through 55 as though the same had been fully set forth at length herein.

57. Defendants' discrimination of Plaintiffs as described above was in violation of the PHRA, 43 Pa. Cons. Stat. Ann. §955(a) *et seq.*

58. As a direct result of Defendants' discriminatory actions in violation of the PHRA, Plaintiffs lost wages and other economic benefits of their employment with Defendant College, in addition to suffering other consequential damages including pain and suffering.

WHEREFORE, Plaintiffs demand judgment against Defendants pursuant to the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. §955(a) *et seq.* as follows:

a. That Defendant College be ordered to reinstate Plaintiffs Larry and Suzanne Brugh into the positions they occupied prior to Defendants' discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

b.      That Defendants be required to compensate Plaintiffs for the full value of wages they would have received had it not been for Defendants' illegal treatment of Plaintiffs, with interest until the date Plaintiffs are offered employment into a position substantially equivalent to the one which Plaintiff Larry Brugh occupied on December 10, 2012 and the one which Plaintiff Suzanne Brugh occupied prior to the start of the 2012-2013 basketball season;

c.      That Defendants be required to provide Plaintiffs with front pay if the Court determines reinstatement is not feasible;

d.      That Defendants be required to compensate Plaintiffs for lost benefits;

e.      That Plaintiffs be awarded compensatory damages, including damages for pain and suffering, in an amount to be determined at trial;

f.      That Defendants be enjoined from discriminating or retaliating against Plaintiffs in any manner prohibited by the PHRA;

g.      That Plaintiffs be awarded against Defendants the costs and expenses of this litigation, including a reasonable attorneys fee; and

h.      That Plaintiffs be granted such further legal and equitable relief as the Court may deem just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY AS TO ALL COUNTS.**

Respectfully submitted:

**ROTHMAN GORDON, PC**

*/s/ James W. Carroll*
James W. Carroll
PA I.D. No. 21830

310 Grant Street, 3rd Floor
Pittsburgh, PA  15219
(412) 338-1117
Firm I.D. No.:  010

JWCarroll@rothmangordon.com
Attorney for Plaintiffs

        *s/ Noah R. Jordan*
        Noah R. Jordan
        PA I.D. No. 616267

        Nrjordan@rothmangordon.com
        Attorney for Plaintiffs

4834-3859-7957, v. 1