IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY BRUGH AND SUZANNE BRUGH, | ) ) | Case No. 3:17-cv-71 |
| Plaintiffs, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| MOUNT ALOYSIUS COLLEGE AND THOMAS FOLEY, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.     Introduction

Presently before the Court is Defendants' Motion to Dismiss for Failure to State a Claim or, in the Alternative, Motion to Strike. (ECF No. 6.) The Motion has been fully briefed (*see* ECF Nos. 6, 12) and is ripe for disposition. For the reasons that follow, this Court will **DENY** Defendants' Motion.

### II.     Jurisdiction

The Court has jurisdiction over Plaintiffs' federal claim pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims occurred in the Western District of Pennsylvania.

### III.     Background

In their Complaint, Plaintiffs allege the following facts, which this Court considers as true for the purposes of deciding the instant Motion.

Plaintiffs Larry Brugh ("Mr. Brugh") and Suzanne Brugh ("Ms. Brugh") are husband and wife. Mr. Brugh worked for Defendant Mount Aloysius College ("Mount Aloysius") from 1985 until December 10, 2012, when Mount Aloysius terminated his employment. (ECF No. 1 at ¶¶ 11, 36.) Ms. Brugh was hired by Mount Aloysius in 1988, and served as the Game Clock Operator for the college's basketball games from 2008 until 2012, when Mount Aloysius terminated her employment. (*Id.* at ¶¶ 39-42.) Plaintiffs allege that Mount Aloysius violated Title VII of the Civil Rights Act ("Title VII") by terminating their employment in retaliation for engaging in protected activity and also violated the Pennsylvania Human Relations Act ("PHRA") by discriminating against them. (*Id.* at 9-11.) Because of the fact-intensive nature of these claims, this Court will discuss in great detail the history of Plaintiffs' employment at Mount Aloysius as alleged in the Complaint.

As noted above, Mr. Brugh was hired by Mount Aloysius in 1985. (*Id.* at ¶ 11.) In 1989, he was appointed Assistant Dean of Students. (*Id.* at ¶ 12.) In 1996, he was appointed Director of Career Services, a position he held simultaneously with his position as Assistant Dean of Students. (*Id.*)

The events pertinent to the instant dispute began in 1992. That year, Mount Aloysius had plans to hire an African-American man as the Head Coach of the Men's Basketball Team. (*Id.* at ¶ 13.) Mount Aloysius decided not to hire the applicant when it discovered that his wife was white. (*Id.* at ¶ 14-15.) Mr. Brugh, who "was present when the Dean of Students indicated that the coach would not be hired because of his race" (*id.* at ¶ 16), "immediately objected to and opposed" Mount Aloysius' decision not to hire the African-

American coaching candidate because, in his mind, "such a decision would constitute illegal discrimination." (*Id*. at ¶ 17.)

Subsequent to Mount Aloysius' decision not to hire the African-American coaching applicant, Mount Aloysius terminated the Athletic Director. (*Id*. at ¶ 18.) The former Athletic Director then sued Mount Aloysius for discrimination, claiming that he was terminated in retaliation for opposing racial discrimination relating to Mount Aloysius' decision not to hire the coaching applicant. (*Id*.) Mr. Brugh acted as a witness in the Athletic Director's case and filed an affidavit in support of his retaliation claims. (*Id*. at ¶ 19.) The rejected coaching candidate also sued Mount Aloysius for discrimination (*id.* at ¶ 21); Mr. Brugh acted as a witness in his case, and was willing to testify in support of the candidate's discrimination claims. (*Id*. at ¶ 22.) Mount Aloysius had knowledge of Mr. Brugh's participation in the discrimination cases filed by the former Athletic Director and the coaching candidate. (*Id.* at ¶¶ 20, 23.)

Plaintiffs filed discrimination charges against Mount Aloysius in 1997 and 1998. (*Id.* at ¶ 24.) Plaintiffs alleged that Mount Aloysius retaliated against them because they opposed the school's discriminating against the African-American coaching candidate and because they supported the retaliation and discrimination claims brought by the former Athletic Director and the coaching applicant. (*Id.*) The Complaint does not specify how these discrimination charges were resolved.

In 2011 and 2012, administrators for Mount Aloysius repeatedly commented on Mr. Brugh's participation in the racial discrimination claims brought by the former Athletic Director and the coaching candidate. (*Id*. at ¶ 27.)

3

Specifically, in August 2011, Suzanne Campbell, the Senior Vice President of Mount Aloysius, mentioned to Mr. Brugh that she had reviewed a report regarding Mr. Brugh's involvement in the civil rights lawsuits brought against Mount Aloysius and stated that she had discussed the matter with Thomas Foley, the President of Mount Aloysius. (*Id.*) In October 2011, Campbell stated that Foley was unaware of Mr. Brugh's involvement in the retaliation and discrimination claims and that Foley did not want to know anything about them. (*Id.*) This contradicted Campbell's August, 2011 statement that she had personally discussed Brugh's involvement with Foley. (*Id.*)

In March 2012, Campbell advised Mr. Brugh that "it's probably best not to mention the racial incident of the past in the formal human resources review, so people don't think you can't let go of the past." (*Id.*)

On June 8, 2012, Mount Aloysius reappointed Mr. Brugh to his positions of Assistant Dean for Student Affairs and Director of Career Counseling, effective July 1, 2012, and continuing through June 30, 2013. (*Id.* at ¶ 28.) But in August 2012, Mount Aloysius demoted Mr. Brugh by removing him from the position of Assistant Dean of Students. (*Id.* at ¶ 29.) Additionally, Mount Aloysius relocated Mr. Brugh's office, placing him in a different building than his administrative assistant. (*Id.*) Mr. Brugh remained the Director of Career Services. (*Id.*)

On August 3, 2012, President Foley met with Mr. Brugh and mentioned Paul Farcus, who had presided over a previous hearing concerning Mr. Brugh's involvement in allegations of racism and retaliation at Mount Aloysius. (*Id.* at ¶ 27.) During the meeting,

4

Foley stated that "anyone who would call a lawyer doesn't deserve the courtesy of a meeting with the President." (*Id.*)

On August 23, 2012, Brugh met with Vice President of Academic Affairs Tim Fulop, who stated that Mr. Brugh was unable to let go of a "ten-year-old problem." (*Id.*) This was a reference to Mr. Brugh's opposition to, and participation in, the claims of racial discrimination and retaliation against Mount Aloysius. (*Id.*)

In a Student Affairs Division meeting on September 7, 2012, Foley told the attendees not to interact with Mr. Brugh. (*Id.*) Foley stated that the "last time Larry filed a grievance," Mr. Brugh "brought a lot of good people into it." (*Id.*) Foley additionally stated that "I never read the case before but because of this matter with Larry, I just read it. I am a lawyer and I am going to handle this situation and I want you to know I have got all of your backs." (*Id.*) Foley also announced that Mr. Brugh was no longer serving as the Dean of Student Affairs. (*Id.* at ¶ 30.) Foley reported that Mr. Brugh had hired an attorney and speculated that he was going to allege that he was demoted and discriminated against because he is a man. (*Id.*) Foley declared that he had never heard of an employee alleging gender discrimination when he or she has not been demoted. (*Id.*) Foley also told the attendees that it "changes the temperature of things whenever somebody does that" (*id.*), apparently in reference to Mr. Brugh's hiring an attorney.

Foley also informed the attendees that he had reviewed the school's records from Mr. Brugh's previous lawsuit. (*Id.* at ¶ 31.) Foley referenced Brugh as having a big "L" on his forehead and advised the attendees not to get in the middle of Mr. Brugh's present action against Mount Aloysius. (*Id.*) Foley stated that people got caught up in Mr. Brugh's

last lawsuit, which made their lives more difficult. (*Id.*) Foley further advised the attendees to walk away from Mr. Brugh in the event that he attempted to discuss the case with them. (*Id.*) Additionally, Foley told attendees that Mr. Brugh had filed 8 or 9 complaints in the previous six months, but that none rose to the level of discrimination. (*Id.* at ¶ 32.) Foley also remarked that it was perplexing that someone would believe that an employment discrimination case against a private institution could be brought in federal court. (*Id.*)

On September 21, 2012, two weeks after the meeting in which Foley discussed Mr. Brugh's complaints, Mr. Brugh's attorney sent a letter to Daniel Rullo, the Chairperson of Mount Aloysius' Board of Trustees. (*Id.* at ¶ 33.) The letter alleged that Mount Aloysius had discriminated and retaliated against Mr. Brugh. (*Id.*)

On December 10, 2012, Mount Aloysius terminated Mr. Brugh. (*Id* at ¶ 34.) Mount Aloysius gave two reasons for its decision to fire Mr. Brugh: (1) the letter that Mr. Brugh's attorney sent to Mount Aloysius on September 21, 2012 and (2) the revocation of a donation to Mount Aloysius by a relative of Mr. Brugh. (*Id.*) There were no performance-related reasons for Mr. Brugh's termination. (*Id.* at ¶ 36.)

As noted above, Ms. Brugh was hired by Mount Aloysius in 1988. (*Id.* at ¶ 39.) Ms. Brugh worked in various capacities, including as the Game Clock Operator for basketball games beginning in the 2007-08 season. (*Id.* at ¶ 40.) Mount Aloysius terminated Ms. Brugh from her position before the 2012-13 season, despite there being no performance-related reasons for doing so. (*Id.* at ¶¶ 43-45.) A fellow Game Clock Operator was not terminated. (*Id.* at ¶¶ 41-43.)

Plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). (*Id.* at ¶ 3.) On May 6, 2016, the EEOC concluded that "reasonable cause" existed for Plaintiffs' claims. (*Id.*) On January 30, 2017, Plaintiffs were given Notices of Right to Sue from the EEOC. (*Id.*)

Plaintiffs filed their two-count Complaint before this Court on April 28, 2017. (ECF No. 1.) In Count I, Plaintiffs allege that Mount Aloysius retaliated against them for participating in protected conduct, in violation of the Civil Rights Act of 1964. (*See id.* at ¶¶ 47-55.) In Count II, Plaintiff allege that Mount Aloysius and Foley discriminated against them in violation of the PHRA. (*See id.* at ¶¶ 56-58.)

Defendants filed their Motion to Dismiss or, in the Alternative, Motion to Strike, on July 7, 2017. (ECF No. 6.) Defendants assert that this Court should dismiss Plaintiffs' case under Fed. R. Civ. P. 12(b)(6). Specifically, Defendants argue (1) Plaintiffs failed to state a claim for retaliation (*see* ECF No. 7 at 6-12), (2) Plaintiffs' retaliation claims are barred by the statute of limitations (*id.* at 12-14), and (3) Plaintiffs' retaliation claims are barred by *res judicata* and collateral estoppel. (*Id.* at 14-15.) Alternatively, Defendants argue that this Court should strike paragraphs 13-18 and 21 of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(f). (*Id.* at 15-16.)

## IV.    Standard of Review

A complaint may be dismissed under Federal Rule of Civil Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled

to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[1] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

---

[1] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir.2011) (citing *Santiago v. Warminster Township*, 629 F.3d 121, 130 (2010)).

## V.    Discussion

As noted above, two motions are currently pending before this Court: (1) Defendants' Motion to Dismiss (ECF No. 6) and, in the alternative, (2) Defendants' Motion to Strike. (*Id.*) The Court will address Defendants' motions in turn.

### A. The Court Will Deny Defendants' Motion to Dismiss Because Plaintiffs' Complaint Sufficiently Alleges a *Prima Facie* Retaliation Claim

"Title VII prohibits employers from retaliating against employees for complaining about discrimination and harassment in the work place." *Young v. City of Philadelphia Police Dep't*, 651 F. App'x 90, 95 (3d Cir. 2016) (citing 42 U.S.C. § 2000e-3(a)); *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 256 (3d Cir. 2017).

To establish retaliation under Title VII, "a plaintiff must proffer evidence to show that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between the plaintiff's participation in the protected activity and the adverse employment action." *Collins v. Kimberly-Clark Pennsylvania, LLC*, No. 17-1942, 2017 WL 4074535, at *4 (3d Cir. Sept. 14, 2017) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 341-42 (3d Cir. 2006)); *see, e.g., Carvalho-Grevious*, 851 F.3d at 257; *Young*, 651 F. App'x at 95; *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015); *Kahan v. Slippery Rock Univ. of Pennsylvania*, 50 F. Supp. 3d 667, 701 (W.D. Pa. 2014), aff'd, 664 F. App'x 170 (3d Cir. 2016); *Hague v. Alex E. Paris Contracting Co., Inc.*, No. 2:14CV655, 2016 WL 5468118, at *8 (W.D. Pa. Sept. 29, 2016); *Sampath v. Concurrent Techs. Corp.*, No. CIVA 3:03-CV-264, 2008 WL 868215, at *34 (W.D. Pa. Mar. 31, 2008), aff'd, 299 F. App'x 143 (3d Cir. 2008).

9

Plaintiffs have satisfied their *prima facie* burden at the motion to dismiss stage. As explained below, Plaintiffs have pleaded sufficient facts to support a reasonable inference that (1) they engaged in activity protected under Title VII, (2) Defendants took adverse employment actions against them, and (3) these adverse employment actions were casually connected to Plaintiffs' protected activities.

### 1. Plaintiffs Pleaded Sufficient Facts to Give Rise to a Reasonable Inference that They Engaged in a Protected Activity

"With respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')." *Moore*, 461 F.3d at 341 (quoting *Slagle v. County of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006)). "An employee engages in protected activity by complaining to his or her employer about conduct that is prohibited by Title VII." *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 555 (E.D. Pa. 2017) (citing *Connelly*, 809 F.3d at 792). "The employee must have a reasonable, good faith, belief that the complained of conduct violates Title VII." *Ellingsworth*, 247 F. Supp. 3d at 555 (citing *Moore*, 461 F.3d at 341).

Plaintiffs' well-pleaded allegations give rise to a reasonable inference that they participated in protected activity. Plaintiffs assert that Mr. Brugh's attorney sent Mount Aloysius a letter on September 21, 2012, in which Mr. Brugh alleged that Mount Aloysius had unlawfully discriminated and retaliated against him because of his opposition to the alleged racial discrimination that occurred at Mount Aloysius in the early 1990s. (ECF No. 1 at ¶ 33.) After reading the letter, the Court concludes that Mr. Brugh had a good-faith,

reasonable belief that the conduct he complained about in the letter violated Title VII. (ECF No. 1-2.) Therefore, Plaintiffs have satisfied the first prong of their *prima facie* claim for retaliation under Title VII.

### 2. Plaintiffs Pleaded Sufficient Facts to Give Rise to a Reasonable Inference that Defendants Took Adverse Employment Actions Against Them

"For an employer's action to satisfy the second prong of a *prima facie* case of retaliation, the plaintiff 'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 195 (3d Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)) (internal quotation marks omitted). The Third Circuit has repeatedly held that termination of employment constitutes an adverse employment action for purposes of Title VII. *See, e.g., LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007); *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001).

Plaintiffs have sufficiently alleged that they suffered adverse employment actions. According to the Complaint, Mount Aloysius demoted Mr. Brugh in August 2012, and then terminated him on December 10, 2012. (ECF No. 1 at ¶ 50.) The Complaint also alleges that Mount Aloysius terminated Ms. Brugh before the 2012-2013 basketball season began. (*Id.* at ¶ 51.) As noted above, termination constitutes an adverse employment action. Therefore, Plaintiffs have satisfied the second prong of their *prima facie* case for retaliation under Title VII. *See LeBoon*, 503 F.3d at 232; *Abramson*, 260 F.3d at 288.

11

### 3. Plaintiffs Pleaded Sufficient Facts to Give Rise to a Reasonable Inference that Defendants' Termination of Plaintiffs was Causally Connected to Their Protected Activities

"To establish causation at the *prima facie* stage, a plaintiff must introduce evidence about the 'scope and nature of conduct and circumstances that could support the inference' of a causal connection." *Collins*, 2017 WL 4074535, at *4 (quoting *Farrell v. Planter's Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000)).

"In a Title VII retaliation case, a plaintiff can show retaliation through either direct or circumstantial evidence." *Nepomuceno v. Astellas US LLC*, No. CIV. 11-4532 FSH, 2013 WL 3746143, at *3 (D. N.J. July 9, 2013) (citing *Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir.2005)); *see also Salkovitz v. Pioneer Elecs. (USA) Inc.*, 188 F. App'x 90, 92 (3d Cir. 2006).

"Direct evidence of retaliatory animus, though perhaps rare, permits a direct inference that the defendant 'placed substantial negative reliance on an illegitimate criterion in reaching [his] decision.'" *Burton v. MBNA Am. Bank, N.A.*, No. C.A.03-915 GMS, 2005 WL 1463533, at *5 (D. Del. June 22, 2005) (quoting *Kachmar v. Sungard Data Sys., Inc.*, 109 F.3d 173, 179 (3d. Cir. 1997)); *see Keim v. Nat'l R.R. Passenger Corp.*, No. CIV.A. 05-CV-4338, 2007 WL 2155656, at *6 (E.D. Pa. July 26, 2007) ("'Direct evidence' is evidence sufficient for the factfinder to find that the decision maker 'placed substantial negative reliance on an illegitimate criterion in reaching [his] decision'") (quoting *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 976 (3d Cir. 1998)).

"In the absence of direct evidence, the plaintiff may nevertheless prove retaliatory animus with indirect evidence." *Burton*, 2005 WL 1463533, at *5. "In certain narrow circumstances, an 'unusually suggestive' proximity in time between the protected activity

12

and the adverse action may be sufficient, on its own, to establish the requisite causal connection." *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997)).

When the temporal proximity "is not sufficiently close to imply direct causation, we apply the 'timing plus other evidence' test to determine whether other pleaded facts suggest retaliatory motive." *Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014) (citing *Farrell,* 206 F.3d at 280)); *see Carter v. Midway Slots & Simulcast*, 511 F. App'x 125, 130 (3d Cir. 2013) (applying "timing plus other evidence" test). Moreover, courts consider "'a broad array of evidence' in determining whether a sufficient causal link exists." *Daniels*, 776 F.3d at 196 (quoting *LeBoon*, 503 F.3d at 232). Courts look at the "circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Daniels*, 776 F.3d at 196 (citing *LeBoon*, 503 F.3d at 232–33; *Marra*, 497 F.3d at 302; *Farrell*, 206 F.3d at 280–81).

Plaintiffs have sufficiently alleged a causal connection between their protected activities and the termination of their employment. According to Plaintiffs, Mount Aloysius explicitly cited the letter from Mr. Brugh's attorney, which alleged that Mount Aloysius was unlawfully discriminating and retaliating against Mr. Brugh, as one of its reasons for terminating Mr. Brugh. (ECF No. 1 at ¶ 34.) Therefore, Plaintiffs have alleged sufficient *direct* evidence that they were retaliated against for engaging in protected employment activities.

Additionally, Plaintiffs have alleged sufficient *indirect* evidence to give rise to a

13

reasonable inference that they were terminated for their protected activities. In the year

prior to terminating Plaintiffs' employment, various administrators—including Foley, the

President of Mount Aloysius—allegedly made critical comments about Mr. Brugh's

support for, and participation in, the discrimination cases from the early 1990s. Plaintiffs

also allege that Foley made negative remarks about the employment discrimination and

retaliation case that Plaintiffs brought against Mount Aloysius in 1997-1998. Therefore,

Plaintiffs have alleged facts that plausibly establish causation under the "timing plus other

evidence" test employed by courts in the absence of direct evidence of retaliation.

Therefore, Plaintiffs have satisfied the third prong of their *prima facie* claim for retaliation

under Title VII.

### 4. Defendants' Arguments in Support of Their Motion to Dismiss Fail to Persuade the Court

This Court is not persuaded by Defendants' contention that Plaintiffs have not

pleaded a causal connection between their protected activities and their terminations. (*See*

ECF No. 7 at 8-12). The gist of Defendants' argument is that, because Plaintiffs engaged in

protected activities in the 1990s—decades before their terminations in 2012—Plaintiffs

cannot establish a causal connection between their engaging in those activities and

Defendants' termination of their employment. (*See Id.*)

The first problem with Defendants' argument is that it ignores the fact that Plaintiffs

have also alleged that their terminations resulted from their protected activity in 2011 and

2012—most importantly, the letter that Mr. Brugh's attorney sent to Mount Aloysius, dated

September 21, 2012, which alleged that Mr. Brugh had been unlawfully discriminated and

14

retaliated against because he opposed what he believed to be unlawful discrimination at Mount Aloysius. (ECF No. 1-1.) Thus, contrary to Defendants' contention, Plaintiffs do not merely allege a causal connection between their protected conduct in the 1990s and their terminations in 2012; they allege a causal connection between Plaintiffs' protected conduct in 2011 and 2012 and their terminations later that year.

Alternatively, Defendants argue that, as a matter of law, Plaintiffs failed to allege sufficient facts to establish a causal connection between the September 2012 letter and Mr. Brugh's termination in December of 2012. (*See* ECF No, 7 at 10.) To support this argument, Defendants cite cases in which courts in the Third Circuit held that a temporal proximity of as short as a few weeks between an employee's complaint and the alleged retaliatory action was insufficient to establish a causal connection. However, as the Third Circuit has repeatedly stated, "[i]t is important to emphasize that it is causation, not temporal proximity [or evidence of antagonism], that is an element of plaintiff's prima facie case, and temporal proximity [or antagonism] merely provides an evidentiary basis from which an inference can be drawn." *Farrell*, 206 F.3d at 280 (citing *Kachmar*, 109 F.3d at 178). When, as is the case here, temporal proximity "is not sufficiently close to imply direct causation, [courts] apply the 'timing plus other evidence' test to determine whether other pleaded facts suggest retaliatory motive." *Blakney*, 559 F. App'x at 186. As discussed above, Plaintiffs have sufficiently satisfied their burden to establish their *prima facie* case based on the "other evidence" in their Complaint from which a reasonable inference of retaliatory motive can

be drawn.[2]

Defendants next argue that Plaintiffs' retaliation claims are barred by the statute of

limitations because they are "based upon events that occurred almost twenty years before

the adverse employment action." (ECF No. 7 at 12). This argument is easily dismissed.

"Generally, a claim accrues in a federal cause of action when a plaintiff has a complete and

present cause of action, that is, when the plaintiff can file suit and obtain relief." *Omar v.*

*Blackman*, No. CV 10-1071, 2013 WL 12099395, at *1 (E.D. Pa. Sept. 23, 2013), aff'd, 590 F.

App'x 162 (3d Cir. 2014) (quoting *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir.

2010)) (internal citations and quotations omitted). Plaintiffs retaliation claims accrued when

they suffered adverse employment actions. *See Nance v. City of Newark*, No. 97-CV-6184

(DMC), 2010 WL 2667440, at *2 (D. N.J. June 25, 2010) ("Accordingly, the date of accrual for

---

[2] The Court also notes that the cases Defendants cite to support their argument that Plaintiffs have failed to establish temporal proximity are distinguishable from the present case. Several of those cases were disposed of at the summary judgment stage, not at the motion to dismiss stage. *See Thomas v. Town of Hammonton*, 351 F.3d 108 (3d Cir. 2003) (affirming lower court's grant of summary judgment in favor of defendant on causation issue); *McCloud v. United Parcel Serv., Inc.*, 328 F. App'x 777 (3d Cir. 2009) (same); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217 (3d Cir. 2007) (same); *Silvestre v. Sera Care, Inc.*, No. CIV. 02-446, 2002 WL 32341778 (E.D. Pa. Dec. 27, 2002) (granting summary judgment in favor of defendant). Moreover, the cases disposed of at the motion to dismiss stage are also inapposite. In *Elmarakaby v. Wyeth Pharm., Inc.*, No. CIV.A. 09-1784, 2015 WL 1456686 (E.D. Pa. Mar. 30, 2015), the plaintiff cited a single intervening "stray remark," unrelated to the decision to fire plaintiff, in an attempt to establish a causal connection between plaintiff's prior protected activity and his subsequent termination. *Id.* at *8. Here, Plaintiffs have alleged that Mount Aloysius *explicitly* stated that one of the reasons why it terminated Mr. Brugh was because of his attorney's September letter. Moreover, the last case cited by Defendants, *Arneault v. O'Toole*, 864 F. Supp. 2d 361 (W.D. Pa. 2012), *aff'd on other grounds*, 513 F. App'x 195 (3d Cir. 2013), actually supports Plaintiffs' position. Contrary to Defendants' characterization of this case, *Arenault* does not require a "pattern of antagonism" to establish causation in the absence of an unusually suggestive temporal proximity; *Arneault* explains that a "pattern of antagonism" is *one means* of establishing a causal connection, but requires only that plaintiff show that from the "'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Id.* at 385 (citing *Farrell*, 206 F.3d at 281).

16

Plaintiff's retaliation claims is the date that the adverse action(s), if any, were taken against him."). According to the Complaint, Plaintiffs suffered three retaliatory employment actions: (1) "Mr. Brugh's demotion in August, 2012"; (2) "Mr. Brugh's termination on December 10, 2012"; and (3) "the termination of [Ms. Brugh's] position as Game Clock Operator in 2012." (ECF No. 1 at 9.) Thus, contrary to Defendants' assertion, Plaintiffs' retaliation claims accrued in 2012 and are not barred by the statute of limitations.

In addition, Defendants argue that Plaintiffs' retaliation claim is barred by *res judicata*[3] and *collateral estoppel*.[4] (See ECF No. 7 at 14-15.) According to Defendants, the fact that Plaintiffs brought retaliation charges against Mount Aloysius in 1997-1998 precludes them from alleging retaliation in the instant suit. This argument is unconvincing. In the instant suit, Plaintiffs allege that their 2012 terminations were the products of unlawful discrimination and retaliation. Clearly, these claims were not previously litigated in 1997-1998.

In conclusion, Plaintiffs have alleged facts from which plausibly support an inference that they were retaliated against for engaging in protected employment activities. Therefore, this Court will deny Defendants' Motion to Dismiss.

---

[3] "In order to raise successfully the defense of res judicata, the party asserting the defense must demonstrate that (1) there has been a final judgment on the merits in a prior suit; (2) the prior suit involves the same parties or their privies and (3) the subsequent suit is based on the same causes of action." *Purter v. Heckler*, 771 F.2d 682, 690 (3d Cir. 1985) (quoting *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir.1984)).

[4] In the Third Circuit collateral estoppel bars a subsequent action if the following four factors are present: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (internal citations and quotations omitted).

**B. Motion to Strike**

In the alternative to granting Defendants' Motion to Dismiss, Defendants ask this Court to strike six paragraphs from Plaintiffs' Complaint. (*See* ECF No. 7 at 15-16.) Defendants argue that paragraphs 13,[5] 14,[6] 15,[7] 16,[8] 17,[9] 18,[10] and 21[11] should be stricken under Fed. R. Civ. P. 12(f) as "redundant, immaterial, impertinent, and/or scandalous." (ECF No. 7 at 16.) Plaintiffs argue that these paragraphs should not be stricken because they contain information that is crucial to understanding Plaintiffs' current retaliation claims.

Under Fed. R. Civ. P. 12(f), a court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." *Nelson v. Bender*, No. 3:15-64, 2015 WL 8207490, at *4 (W.D. Pa. Dec. 7, 2015). The purpose of a motion to strike "is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Hay v. Somerset Area Sch. Dist.*, No. 3:16-CV-229, 2017 WL 2829700, at *3 (W.D. Pa. June 29, 2017) (quoting *Tennis v. Ford Motor Co.*, 730 F. Supp. 2d 437, 443 (W.D. Pa. 2010)). "'[S]uch

---

[5] Paragraph 13 states, "In the summer of 1992, the College was prepared to hire an African-American male as its Men's Basketball Head Coach." (ECF No. 1 at ¶ 13.)

[6] Paragraph 14 states, "Just prior to hiring the new coach, the College learned that the new coach's wife was Caucasian." (ECF No. 1 at ¶ 14.)

[7] Paragraph 15 states, "Solely because of the new coach's race, the College changed its mind and decided not to hire this coach." (ECF No. 1 at ¶ 15.)

[8] Paragraph 16 states, "Mr. Brugh was present when the Dean of Students indicated that the coach would not be hired because of his race." (ECF No. 1 at ¶ 16.)

[9] Paragraph 17 states, "Mr. Brugh immediately objected to and opposed the College's decision to not hire the new coach because such a decision would constitute illegal racial discrimination." (ECF No. 1 at ¶ 17.)

[10] Paragraph 18 states, "Subsequently, the college's Athletic Director at the time the coach was not hired, Joseph De Antonio, filed a claim of discrimination alleging, in part, that his termination was in retaliation for his opposing racial discrimination when the college failed to hire the Men's Head Basketball Coach." (ECF No. 1 at ¶ 18.)

[11] Paragraph 21 states, "Later, the coaching candidate who was not hired filed a discrimination complaint alleging that the failure to hire him as Head Men's Basketball Coach was the result of racial discrimination." (ECF No. 1 at ¶ 21.)

motions are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" *Id.* (quoting *Tennis*, 730 F. Supp. 2d at 443) (internal citations omitted); *see Bender*, 2015 WL 8207490, at *9 ("The standard for striking under Rule 12(f) is strict and only allegations that are so unrelated to plaintiff's claims as to be unworthy of any consideration should be stricken. Striking a pleading is a drastic remedy to be resorted to only when required for the purposes of justice.") (quoting *Johnson v. Anhorn*, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004)) (internal quotations and citations omitted).

This Court agrees with Plaintiffs that these paragraphs should not be stricken. As Plaintiffs argue, the paragraphs that Defendants move to strike contain background information that is necessary to understand Plaintiffs current claims of retaliation; these paragraphs describe the alleged discriminatory conduct that Plaintiffs opposed in the 1990s and which allegedly motivated Mount Aloysius to retaliate against Plaintiffs in 2011 and 2012. Moreover, while potentially damaging to Defendants' reputation, the allegations in these paragraphs are not redundant, immaterial, impertinent, or scandalous. Therefore, Defendants' Motion to Strike will be denied.

## VI.   Conclusion

Plaintiffs have alleged facts that plausibly support a finding that Defendants unlawfully discriminated against Plaintiffs and retaliated against them for engaging in protected employment activities. Therefore, this Court will deny Defendants' Motion to Dismiss. Moreover, paragraphs 13, 14, 15, 16, 17, 18, and 21 of Plaintiffs' Complaint are

neither redundant, immaterial, impertinent, nor scandalous. Accordingly, this Court will deny Defendants' Motion to Strike.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY BRUGH AND SUZANNE BRUGH, | ) ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) ) |
| MOUNT ALOYSIUS COLLEGE AND THOMAS FOLEY, | ) ) |
| | ) |
| Defendants. | ) |

Case No. 3:17-cv-71

JUDGE KIM R. GIBSON

### ORDER

AND NOW, this 21st day of November, 2017, upon consideration of the Defendants'

Motion to Dismiss for Failure to State a Claim or, in the Alternative, Motion to Strike (ECF

No. 6), and for the reasons set forth in the accompanying memorandum, IT IS HEREBY

ORDERED that Defendants' Motion is DENIED.

BY THE COURT

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE